**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1427-22

JAMES C. MESCALL and
MESCALL & ACOSTA, P.C.,

      Petitioners-Appellants,

v.

CARLOS H. ACOSTA, JR., LAW
OFFICES OF CARLOS H.
ACOSTA, LLC, ANDREW PARK,
SOOYANG PARK, and GEICO
INSURANCE COMPANY,

      Respondents-Respondents,

and

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

      Respondent.

_____

CARLOS H. ACOSTA, JR.,
and LAW OFFICES OF
CARLOS H. ACOSTA, JR., LLC,

      Third-Party Plaintiffs-
      Respondents,

v.

MAXIMILIAN J. MESCALL and
MESCALL LAW, P.C.,

       Third-Party Defendants-
       Appellants.
_____

Argued April 30, 2024 – Decided May 16, 2024

Before Judges Mayer, Paganelli and Augostini.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-1338-22.

Maximilian J. Mescall argued the cause for appellants
(Mescall Law, PC, attorneys; Maximilian J. Mescall, of
counsel and on the briefs).

Timothy Joseph Foley argued the cause for respondents
Carlos H. Acosta, Jr., and Law Offices of Carlos H.
Acosta, Jr., LLC (Law Offices of Carlos H. Acosta, Jr.,
LLC, and Foley & Foley, attorneys; Carlos H. Acosta,
Jr., Sherry L. Foley, and Timothy Joseph Foley, of
counsel and on the brief).

PER CURIAM

Petitioners James C. Mescall and Mescall & Acosta, P.C. (collectively

Mescall) appeal from four October 13, 2022 orders granting summary judgment

to respondents Carlos H. Acosta, Jr. and Law Offices of Carlos H. Acosta, Jr.,

LLC (collectively Acosta), dismissing Mescall's attorney lien petition, denying

Mescall's motion to compel discovery, denying Mescall's motion to deem requests for admissions as admitted, and denying Mescall's motion to dismiss Acosta's abuse of process claim with prejudice. We affirm.

We recite the facts from the motion record. This case involves an acrimonious dispute between the former partners and equity shareholders of the law firm Mescall & Acosta, P.C., concerning attorney's fees generated upon the settlement of cases.

In 2020, a disagreement arose between Mescall and Acosta regarding Acosta's handling of the law firm's cases. As a result of the dispute, Mescall and Acosta decided to dissolve the law firm. Mescall and Acosta then entered into a January 15, 2021 confidential Final Settlement Agreement (FSA). Under the FSA, Mescall and Acosta separated effective January 1, 2021.

The FSA addressed Mescall's right to recover a percentage of the net attorney's fees earned on settled cases Acosta took to his new firm. For cases settled in 2020, the FSA provided Mescall would receive an eighty percent share of net attorney's fees generated. For cases settled in 2021, Mescall would receive a thirty-five percent share of net attorney's fees generated.

Paragraph 4(b) of the FSA stated:

> Acosta shall promptly deliver to Mescall all applicable
> attorneys' fees and costs from the settlement or other

resolution of the client files set forth [i]n Exhibit A within seven [] days after the funds are cleared. Acosta shall deposit all checks/payments received from any such settlement or other resolution into his firm's trust account promptly upon receipt.

Paragraph 3(a) of the FSA defined "settlement or other resolution" as a "judgment, [c]ourt [o]rder, arbitration award or resolution via mediation."

Paragraph 6 of the FSA provided:

> After December 31, 2020, no monies from Mescall & Acosta shall be used to pay for any client file costs. From January 1, 2021 forward, Mescall & Acosta or their respective law firms shall bear the costs for the files of the clients choosing to remain with either attorney. Once each such case is settled, Mescall shall retain all reimbursement of costs incurred by Mescall or his firm after December 31, 2020, and Acosta shall retain all reimbursement of costs incurred by Acosta or his firm after December 31, 2020.

Paragraph 19 of the FSA stated:

> Acosta on a going forward basis shall promptly furnish settlement agreements, itemized settlement statements, signed releases, judgments, enforced arbitration awards, and [o]rders [a]pproving [s]ettlement to Mescall for all applicable files to which Mescall is entitled to [thirty-five percent] of legal fees and [eighty percent] of costs reimbursement on an ongoing basis.

On January 13, 2022, Mescall filed a notice of attorney lien pursuant to N.J.SA. 2A:13-5 (lien action) against Acosta and Acosta's new law firm. Mescall alleged Acosta misrepresented the date of the settlement in a matter

filed in Hudson County, entitled Torres v. Park, Docket No. L-4734-19 (Torres matter). In the lien action, Mescall included GEICO Insurance Company (GEICO), Andrew and Sooyang Park (tortfeasors), and New Jersey Manufacturers Insurance Company (NJM) as additional parties.[1]

We briefly recite the facts in the Torres matter. On December 7, 2019, Mescall & Acosta, P.C. filed a personal injury action on behalf of Stephanie Torres against the tortfeasors and the two insurance companies. Torres allegedly suffered injuries as a result of an automobile accident on August 1, 2018, involving one of the tortfeasors.

On the date of the accident, Torres lived with her parents. Her parents had an automobile insurance policy with NJM. The NJM policy afforded underinsured motorist (UIM) benefits with a limit of $100,000 per person.

The tortfeasors had an automobile insurance policy issued by GEICO with a liability limit of $15,000.

On December 23, 2020, GEICO offered its policy limit of $15,000 on behalf of the tortfeasors to settle the Torres matter. That same day, a GEICO claims adjuster emailed the following to the tortfeasors' counsel: "I just got Torres settled for 15k limits." According to an internal note generated by

_____

[1] These parties were the named defendants in the Torres matter.

GEICO's claims adjuster on December 23, 2020, the closure of the <u>Torres</u> matter " pend[ed] [L]ongworth[2] approval for the settlement."

In a certification in support of Acosta's motion for summary judgment in the lien action, Torres stated she "had many questions regarding the offer" and expressed "concern[] how a claim against [her] parents' insurance policy would affect them and increase their premiums." Torres told Acosta she "needed to discuss [the] matter further with [her] parents and would contact [Acosta's] office to schedule an appointment to meet after the [Christmas and New Year] holidays."

According to her certification, in early 2021, after Torres discussed GEICO's offer with her parents, she reviewed the offer with Acosta and discussed proceeding against NJM. After this discussion, Torres authorized Acosta to proceed against NJM "given the limited recovery available from the [tortfeasors'] insurance policy." Torres further stated Acosta "advised that we could not accept the settlement [with the tortfeasors] or execute the [r]elease until [NJM] authorized it."

---

[2] <u>Longworth v. Van Houten</u>, 223 N.J. Super. 174, 194-95 (App. Div. 1988) (requiring an injured victim notify their UIM insurance carrier before settling with a tortfeasor in an underlying action to protect the UIM insurer's right to subrogation).

On February 23, 2021, Acosta sent <u>Longworth</u> notice to NJM to settle the <u>Torres</u> matter with the tortfeasors for GEICO's policy limit of $15,000. On March 29, 2021, NJM granted <u>Longworth</u> approval and authorized the acceptance of GEICO's settlement offer.

On April 7, 2021, Torres signed a release and Acosta sent a letter to counsel for the tortfeasors confirming the settlement. The letter stated: "This shall serve to confirm the settlement of the above-captioned matter for the sum of $15,000.00. I therefore enclose a [r]elease executed by [] Torres, [and] a [s]tipulation of [d]ismissal for filing with the court . . . ."

Acosta deposited the $15,000 settlement payment into his attorney trust account. On May 21, 2021, Acosta issued a check payable to Mescall in the amount of $2,609.39, representing thirty-five percent of the net attorney's fees as a result of the settlement in the <u>Torres</u> matter ($1,601.40), plus eighty percent of costs advanced in the litigation ($1,008). Mescall never deposited the check.

Instead, Mescall filed the lien action against Acosta, the tortfeasors, GEICO, and NJM. In the lien action, Mescall alleged the date of settlement in the <u>Torres</u> matter had to be determined to calculate the attorney's fees owed to him under the FSA. According to Mescall, the <u>Torres</u> matter settled in 2020 rather than 2021, and he was entitled to the difference of the net attorney's fee

A-1427-22

generated in that case, amounting to $2,058.94. Mescall further claimed Acosta intentionally delayed resolution of other personal injury matters "so as to prevent their resolution during the time [] he was at the [f]irm, so that he could attempt to avoid the distribution of [eighty percent] of those fees" under the FSA.

In its answer, GEICO raised multiple affirmative defenses, asserted crossclaims against Mescall and Acosta, and requested reimbursement of fees and costs incurred in defending against the lien action. GEICO also demanded indemnification from Acosta. Based on information in the record, Acosta and Torres agreed to indemnify the tortfeasors and GEICO "in connection with [] Mescall's purported lien."

In an amended answer, Acosta filed an abuse of process counterclaim and third-party complaint against Maximilian J. Mescall and Mescall Law, P.C., alleging Mescall was "using the attorney lien and [the] petition to abuse the civil judicial system." In lieu of filing an answer to Acosta's counterclaim and third-party complaint, Mescall moved to dismiss the abuse of process claim.

Acosta, the tortfeasors, and GEICO moved for summary judgment. Mescall moved to compel discovery, extend discovery, dismiss Acosta's abuse

of process counterclaim with prejudice, and for summary judgment. On October 13, 2022, the judge heard arguments on the parties' motions.

Acosta argued the Torres matter was not settled or resolved prior to January 1, 2021. While GEICO extended an offer on December 23, 2020, Acosta asserted the matter was neither settled nor resolved at that time. Acosta informed the judge that Torres authorized submission of a Longworth notice to NJM, and argued the matter did not settle until April 2021. Thus, Acosta argued Mescall received the proper amount due under the FSA.

On the other hand, Mescall argued Acosta settled or resolved the Torres matter prior to January 1, 2021. He claimed there was an issue of material fact regarding the date Acosta settled or resolved the Torres matter.

According to Mescall, GEICO's December 23, 2020 email to the tortfeasors' counsel "explicitly state[d] the Torres case had settled for [] $15,000" and, therefore, the judge should reject "GEICO's and Acosta's assertion that the case settled on April 7, 2021." Mescall further argued the term "other resolution" in the FSA supported his contention the Torres matter resolved on December 23, 2020, notwithstanding the pendency of Longworth approval from NJM.

Mescall also asserted the judge should consider the parties' practice concerning the settlement of cases under the FSA. He claimed Acosta paid eighty percent of net attorney's fees in other matters settled in 2020 that were pending Longworth approval. Mescall further argued he required additional discovery related to the prior conduct of the parties in settling other cases to determine when the Torres matter settled or resolved.

The judge found there were no material disputed facts precluding the entry of summary judgment. He concluded "[t]here was a pending settlement offer subject to Longworth[] approval, but the case was not settled" before January 1, 2021.

In rejecting Mescall's arguments, the judge relied on the clear and unambiguous language of FSA to determine whether the Torres matter settled or resolved prior to January 1, 2021. The judge explained the FSA explicitly defined "other resolutions" as a "judgment, court order, arbitration award, or resolution via mediation." Therefore, the judge concluded GEICO's settlement offer failed to satisfy the definition of "other resolutions." The judge found "as of December 23, 202[0], nothing was settled or resolved" in the Torres matter because "the parties did not know who would be paying Torres. It could have been GEICO[,] or it could have been NJM. And the parties did not know if

10

Torres'[s] claims against the [tortfeasors] would be dismissed. If NJM refused Longworth approval, the case would have continued against the [tortfeasors]."

The judge concluded the internal notes maintained by GEICO's claims adjuster "confirm[ed]" the Torres matter did not settle on December 23, 2020 because "the offer was subject to Longworth approval at the time the offer was extended." The judge stated the terms of the FSA were "clear and unambiguous." Thus, the judge determined it "would not be appropriate to examine extrinsic or peripheral [sic] evidence" to interpret the FSA.

The judge held:

> [b]ecause the Torres action was . . . settled or resolved after January 1, 2021, Acosta fully satisfied his obligations under the FSA when he paid Mescall $2,612.40 on May 21, 2021, following the settlement of the Torres action and GEICO's payment of the $15,000 settlement amount on May 11, 2021.

The judge next addressed Mescall's argument that the litigation privilege barred Acosta's abuse of process claim. The judge explained "there [was] no question Acosta [] set forth a viable claim for abuse of process against . . . Mescall[]." However, the judge determined Acosta's abuse of process claim should be a "separate tort action" because the payment of attorney's fees from the settlement of the Torres matter was a contractual dispute between Mescall and Acosta. The judge explained GEICO and the tortfeasors were not necessary

11

parties to adjudicate the contractual dispute between the former law partners. In fact, the judge stated "one of the more disturbing aspects of this case, the fact that . . . these elderly defendants from a motor vehicle accident . . . were dragged . . . into this litigation [was] inexplicable."

The judge, citing LoBiondo v. Schwartz,[3] determined "a claim, particularly one involving counsel for an adverse party[,] should . . . be asserted as a separate tort action, not as a claim asserted in the underlying action." Consequently, the judge dismissed Acosta's abuse of process claim without prejudice to allow Acosta "to assert that tort claim in a separate action." By directing the abuse of process claim to proceed as a separately filed action, the judge eliminated any need for GEICO and the tortfeasors to incur unnecessary litigation expenses.

The judge granted the motions for summary judgment filed by the tortfeasors, GEICO,[4] and Acosta, and denied Mescall's motion for summary judgment. Based on his decision granting summary judgment to Acosta, the

---

[3]  199 N.J. 62, 73 (2009).

[4]  On appeal, Mescall failed to brief the October 13, 2022 orders granting summary judgment to the tortfeasors and GEICO. Thus, those issues are waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

tortfeasors, and GEICO, the judge denied Mescall's motions to extend and compel discovery as moot.

On appeal, Mescall argues the judge erred in granting Acosta's motion for summary judgment, denying their motion for summary judgment, and granting their motion to dismiss without prejudice to Acosta's filing a separate action for abuse of process. Mescall also asserts the judge erred in finding the terms of the FSA clear and unambiguous, and declining to consider extrinsic evidence. Additionally, Mescall argues the judge erred in finding the Torres matter was settled in 2021. We reject these arguments.

We review orders granting or denying a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment is appropriate where the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

13

Additionally, we review a trial court's interpretation of a contract, including a settlement agreement, de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). We accord no special deference to a trial court's interpretation of an agreement entered into by the parties. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009). However, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

Further, we review a motion to dismiss de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).

We first consider Mescall's argument the judge erred in granting Acosta's motion for summary judgment. Mescall contends the meaning of the terms "settlement" or "other resolution" in the FSA presented a material issue of disputed fact and required the judge's consideration of extrinsic evidence to determine the meaning of those terms. We disagree.

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original)

14

(quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "Summary judgment should be granted, in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

In general, courts favor enforcement of settlements as a matter of public policy. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008). The plain terms of a settlement agreement must be enforced, unless they were procured by fraud, or compelling reasons exist to preclude enforcement of the settlement. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). A settlement is considered a contract. Ibid.

Among the well-established principles of contract law is the concept that an unambiguous contract provision should be enforced without considering extrinsic evidence. Ross v. Orr, 3 N.J. 277, 281-82 (1949); see also Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019). Only where a contract

is ambiguous in a material respect must the parties be given the opportunity to ascertain the contract's meaning through the submission of extrinsic evidence. Ibid.

On this record, based on the unequivocal language of the FSA, we are satisfied the judge had ample evidence to conclude the Torres matter was not settled or resolved prior to January 1, 2021. As stated in her certification, Torres did not accept GEICO's offer to resolve the Torres matter prior to January 1, 2021 because she needed to discuss the offer with her parents after the holidays.

Further, it was undisputed GEICO's offer required Longworth approval from NJM before Torres could sign a release and execute a stipulation of dismissal. NJM provided Longworth approval to accept GEICO's offer on behalf of the tortfeasors on March 29, 2021, well after the FSA's January 1, 2021 date. Because the Torres matter settled after January 1, 2021, under the FSA, Mescall was entitled to thirty-five percent of the net attorney's fee and reimbursement of eighty percent of the litigation costs advanced before January 1, 2021.

While Mescall disputes the meaning of the FSA's terms "settlement or other resolution," the language in the document is clear. As the judge aptly noted, "[i]t's plain as day." Because the terms of the FSA were clear, particularly

regarding matters that were settled or resolved by a specific date, the judge had no need to consider extrinsic evidence.

We next consider Mescall's argument that the judge erred in dismissing Acosta's abuse of process claim without prejudice. Again, we disagree.

As a general rule, "a dismissal based on the court's procedural inability to consider a case is without prejudice." Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 4:37-2(d) (2024). Although the judge found Acosta's abuse of process claim "viable," he declined to resolve the merits of that claim. Rather, the judge concluded Acosta's abuse of process claim should be "asserted as a separate tort action, not as a claim asserted in the underlying action, allegedly giving rise to the tort of abuse of process."

In dismissing Acosta's abuse of process claim without prejudice, the judge concluded a separate action could be filed by Acosta without embroiling GEICO and the tortfeasors in the contentious and ongoing litigation between Mescall and Acosta regarding the dissolution of their law firm. We discern no legal impediment to the judge's dismissal of Acosta's abuse of process claim without prejudice based on Mescall's inclusion of GEICO and the tortfeasors in the lien action. GEICO and the tortfeasors were unconnected to the contractual dispute between Acosta and Mescall under the FSA. To the extent Acosta may file an

17

abuse of process claim against Mescall in the future, Mescall may raise the litigation privilege as a bar to such a claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1427-22